DUFRESNE, Judge.
Defendant, Frederick Ossey was arrested for the illegal possession of drugs in violation of R.S. 40:967. Defendant filed a Motion to Suppress Evidence obtained as a result of a search and seizure which was denied by the trial court as per decision rendered March 22, 1983. On April 23, 1983, this court denied supervisory writs in this matter.
The Louisiana Supreme Court, 433 So.2d 171, granted a supervisory writ on May 13, 1983, and ordered a remand to this court for briefing, argument and opinion in light of Florida v. Royer, -U.S. -, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) and United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
In accordance with this mandate of the Louisiana Supreme Court, a hearing was held in this matter on June 2, 1983.
We have further reviewed the entire record and briefs in this case and accordingly, deny the writ and affirm the ruling of the trial court denying the Motion to Suppress.
The facts of the offense reveal that on January 17, 1983, two deputies assigned to the narcotics division stopped the defendant at New Orleans International Airport on a flight from Los Angeles, California, as he fit the characteristics of the “Detroit Profile” for drug couriers.
Both deputies testified that the defendant fell under suspicion for the following reasons:
1.) He was coming from a “source” city, that is a city which has proved through experience to be a source of drug traffic.
2.) While walking in the upward concourse, he stopped on several occasions as if to look over his shoulder and appeared nervous.
3.) He claimed only one piece of luggage which was small to medium in size, unusual on a cross-country trip.
4.) He had purchased a one-way ticket for cash in a name different than that on the identification he showed the deputies.
Upon being detained, the deputies asked that Ossey submit to an examination of his luggage. The defendant demanded a search warrant before any examination. The defendant was lead to the narcotics office at New Orleans International Airport where they began to prepare a request for a search warrant.
The deputies, in their testimony, contend that the defendant then gave his consent and even pretended or appeared to sign a Consent to Search Form. The defendant contends that the officers just simply opened his suitcase.
Sixty-five hundred (6,500) sets of Talwin (T’s and Blues) were plainly visible when the suitcase was opened. The defendant was then placed under arrest and charged under R.S. 40:967.
Prior to trial, Ossey filed a Motion to Suppress the evidence obtained in the search of his luggage. The trial court found in oral Reasons for Judgment denying the defendant’s Motion to Suppress that his statements were self-serving and that he was not placed under arrest, nor illegally detained. The trial judge further found that he believed the testimony of the deputies that the defendant gave his consent to search freely and voluntarily; that the search was made in good faith, in that they felt and believed that the defendant had given oral consent and had, in fact, signed the “Consent to Search Form”.
In our review of Florida v. Royer, supra, and United States v. Mendenhall, supra, we find that Royer does not overrule Menden-hall, but further clarifies the boundaries under which an airport investigatory stop and consensual search can be conducted.
*1041 The main thrust of Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877 held that “[a]s long as the person to whom questions are put, remains free to disregard the questions and walk away, there has been no intrusion upon that person’s liberty or privacy as would under the Constitution require some particularized and objective justification.”
In the instant case, the officers were very careful to explain to the defendant that he didn’t have to consent, but would he mind if his luggage was searched. The defendant replied that he wanted to see a search warrant.
The officers responded that they could get a warrant. The officers testified that the defendant was not under arrest at that time and that if he had chosen not to talk to the officers and kept on going, he would not have been detained any longer.
The defendant testified that, although they did not have a search warrant, the police said they could get one and took him to the narcotics office. The defendant stated that he did not feel free to leave. He conceded that he was never told that he couldn’t leave, but the two officers blocked the door, took his bag and said, “Let’s go.”
The trial court found that the defendant’s testimony was self-serving and further found that there was a voluntary accompaniment on the part of the defendant to go with the officers. The learned trial judge had the opportunity to hear the testimony and to judge the credibility and he concluded that the officers had acted in good faith. We agree with the trial court.
The officers were acting in good faith in that they felt and believed the defendant had given them consent to search his luggage.
Their suspicions that he was a drug courier were correct and valid. Although we recognize that the “end does not justify the means”, the record does show that the defendant’s suitcase contained (6,500) sets of T’s and Blues.
We firmly believe that the health and welfare of our country, especially the youth, demand that the laws regarding search and seizure in the highly sophisticated area of drug traffic should not be subjected to the same scrutiny as in other areas. As Justice Powell concurring in United States v. Mendenhall, supra 446 U.S. at 561, 100 S.Ct. at 1881 observed:
“The public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit.”
Accordingly, we find that Ossey’s consent was given freely and voluntarily and that he had not been unlawfully confined or detained prior to his consent to search. Thus, his constitutional rights have not been violated.
The judgment of the trial court, denying the Motion to Suppress is accordingly affirmed.
WRIT DENIED.